## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTONY KELLEY<br>125 Main Street<br>P.O. Box 11<br>Volant, PA 16156 | : <br> : <br> : <br> : |
| | :     **CIVIL ACTION** |
| Plaintiff, | : |
| | :     **No.:**_____ |
| v. | : |
| | : |
| SYSCO PITTSBURGH, LLC f/k/a<br>SYSCO FOOD SERVICES OF<br>PITTSBURGH, LLC<br>One Whitney Drive<br>Harmony, PA 16037 | : <br> :     **JURY TRIAL DEMANDED**<br> : <br> : <br> : |
| | : |
| Defendant. | : |
| | : |

## CIVIL ACTION COMPLAINT

Plaintiff, Antony Kelley ("Plaintiff"), by and through his undersigned counsel, hereby avers as follows:

### INTRODUCTION

1.    Plaintiff brings this action against Defendant, Sysco Pittsburgh, LLC f/k/a Sysco Food Services of Pittsburgh, LLC ("Defendant"), for unlawful disability discrimination and retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), the Pennsylvania Human Relations Act, 43 Pa.C.S. § 951 *et seq.* ("PHRA"),[1] and for common law wrongful discharge in violation of the public policy of the Commonwealth of Pennsylvania, seeking all damages, including, but not limited to, economic loss, compensatory, and punitive damages, as well as all other relief deemed appropriate under applicable law.

---

[1] A reference to claims under the PHRA is made herein only for notice purposes. Plaintiff's case was administratively closed with the EEOC and he has thus been required to timely initiate the instant lawsuit. However, he will seek leave to amend this complaint by adding identical claims (as alleged under ADA) under the PHRA once such claims are also fully administratively exhausted.

## PARTIES

2.    Plaintiff is an individual.

3.    Plaintiff is a citizen of the Commonwealth of Pennsylvania and is domiciled in Volant, Pennsylvania.

4.    Defendant is a Delaware limited liability company with its principal place of business located in Harmony, Pennsylvania.

5.    Defendant is in the business of distributing food and food products to the foodservice industry.

6.    At all times material hereto, Plaintiff was an "employee" of Defendant as defined by and within the meaning of the statutes that form the bases for this action.

7.    At all times material hereto, Defendant was Plaintiff's "employer" as defined by and within the meaning of the statutes that form the bases for this action.

8.    At all times material hereto, Defendant had more than fifteen (15) employees.

9.    At all times material hereto, Plaintiff worked in Pennsylvania.

10.    At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment or agency and in furtherance of its business.

## JURISDICTION AND VENUE

11.    The causes of action that form the legal bases of this action arise under the ADA.

12.    This Court, in accordance with 28 U.S.C. §§ 1331 and 1343(a)(4), has original subject matter jurisdiction over Plaintiff's claims because this civil action arises under laws of the United States and seeks redress for violations of federal civil rights laws.

13.     This Court, in accordance with 28 U.S.C. § 1367, has supplemental jurisdiction over Count II of this action because the claims set forth therein and the claims set forth in Count I arise from a common nucleus of operative fact.

14.     This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

15.     Pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district and, in addition, Defendant is deemed to reside where it is subject to personal jurisdiction, making Defendant a resident of the Western District of Pennsylvania.

16.     Plaintiff filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff has properly exhausted his administrative proceedings before initiating this action by timely filing and dual-filing his Charge with the EEOC and the PHRC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

17.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## FACTUAL BACKGROUND

18.     Plaintiff incorporates the paragraphs above as if set forth herein in their entirety.

19.     On or about October 25, 2015, Plaintiff was hired as a Warehouse Selector / Picker at Defendant.

20.     In Plaintiff's role as Warehouse Selector / Picker at Defendant, Plaintiff reported to Ken Purvis ("Purvis"), Chad Cook ("Cook"), Justin Thomas ("Thomas"), and Kevin Bartolomeo ("Bartolomeo").

21.     At all times material hereto, Plaintiff suffered from Type I diabetes, which constitutes a "disability" as defined by and within the meaning of the ADA because it (at times) substantially limited some of Plaintiff's major life activities and major bodily functions, including, but not limited to, performing manual tasks, walking, standing, lifting, bending, speaking, concentrating, thinking, communicating, working, normal bladder functioning, and normal endocrine functioning.

22.     At all times material hereto, as a result of Plaintiff's diabetes, he needed to periodically test his blood sugar, eat snacks to manage his blood sugar and/or take insulin.

23.     Shortly after Plaintiff began working at Defendant, Plaintiff advised Defendant's management – including, but not limited to, Purvis – of his diabetes and asked Purvis and Defendant's human resources department if Defendant could provide him with reasonable accommodations by allowing him to take breaks periodically or as needed in order to (1) test his blood sugar; (2) eat snacks to manage his blood sugar; and/or (3) take insulin. Defendant approved this request for a reasonable accommodation.

24.     On or about May 11, 2016, Plaintiff reported serious difficulties with the use of his arms (later diagnosed as carpal tunnel syndrome and tendinitis) to Defendant's management, including, but not limited to, Cook and Thomas.

25.    Plaintiff's carpal tunnel syndrome and tendinitis were each a "disability" as defined by and within the meaning of the ADA because they each (at times) substantially limited certain of Plaintiff's major life activities and major bodily functions, including, but not limited to, performing manual tasks, lifting, and working.

26.    On or about May 12, 2016, Plaintiff visited an urgent care physician in connection with his carpal tunnel syndrome and tendinitis, was placed on light-duty, and was told to see a specialist.

27.    On or about May 13, 2016, Plaintiff visited Defendant's workers' compensation medical facility in connection with his carpal tunnel syndrome and tendinitis and consulted with Valerie Bloom ("Bloom"), who told Plaintiff that she would recommend that he be placed on light-duty and that he see a specialist. During that visit:

      a.    Bloom told Plaintiff that she was stepping out of the room to call Richard Walmsley ("Walmsley"), Defendant's Safety Manager, and recommend that Plaintiff be placed on light-duty;

      b.    When Bloom returned from her call with Walmsley, she told Plaintiff that Walmsley had told her to put Plaintiff on full-duty and that Plaintiff should not be approved for workers' compensation;

      c.    Bloom cleared Plaintiff to return to work on full-duty; and

      d.    Plaintiff complained to Bloom and told her that he thought it was inappropriate for her to clear him for full-duty after telling him that she recommended that he be placed on light-duty and see a specialist in connection with his medical conditions.

28.     On or about May 13, 2016, Plaintiff returned to work on full-duty, which resulted in him exacerbating his carpal tunnel syndrome and tendinitis.

29.     After returning to work on full-duty on or about May 13, 2016, Plaintiff complained to Defendant's management, including, but not limited to, Purvis, about Defendant's management – including, but not limited to, Walmsley – inappropriately coordinating with Bloom to have Plaintiff placed on full-duty and to interfere with Plaintiff seeking workers' compensation benefits.

30.     Later that day, Defendant's management sent Plaintiff home because his carpal tunnel syndrome and tendinitis were causing him too much pain.

31.     In or about May of 2016, Plaintiff also complained to Defendant's human resources – including, but not limited to, Jessica Coffman – about Defendant's management – including, but not limited to, Walmsley – inappropriately coordinating with Bloom to have Plaintiff placed on full-duty and to interfere with Plaintiff seeking workers' compensation benefits.

32.     On or about May 16, 2016, Plaintiff asked Defendant's management to place him on light-duty in connection with his carpal tunnel syndrome and tendinitis and provided Defendant's management with medical documentation in support of his request. Defendant denied this request and claimed that it did not provide light-duty when employees had restrictions.

33.     Defendant's management subsequently informed Plaintiff that he would be able to return to work on light-duty, effective June 7, 2016, and that he was only being permitted to work on light-duty because it was based on a workers' compensation claim.

34.     After returning to work on light-duty, Plaintiff was subjected to tremendous animosity by Defendant's management – including, but not limited to, Purvis – by, among other things, treating him in a rude and condescending manner, arbitrarily changing his shift time, and refusing to provide him with a schedule so that Plaintiff would know when he was to appear for work.

35.     On or about June 10, 2016, Defendant's management called Plaintiff into a meeting during which they interrogated Plaintiff about and unjustly reprimanded Plaintiff for breaks and time off that he had taken as reasonable accommodations for his disabilities.

36.     Later on or about June 10, 2016, Defendant's management informed Plaintiff that he was suspended without pay, effective immediately, and escorted him out of the building.

37.     Defendant did not provide Plaintiff with any reason for his suspension without pay.

38.     By way of a letter, dated June 15, 2016, Defendant's management informed Plaintiff that Defendant had terminated his employment, effective immediately.

39.     Defendant's stated reason for terminating Plaintiff's employment was "violation of the union work rules." That stated reason is blatantly pretextual.

40.     As a direct and proximate result of the discriminatory and retaliatory conduct of Defendant, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

## COUNT I
## <u>Violations of the Americans with Disabilities Act ("ADA")</u>
**([1] Actual/Record of/Perceived Disability Discrimination, [2] Failure to Accommodate, [3] Retaliation; [4] Hostile Work Environment)**

41.     Plaintiff incorporates the paragraphs above as if set forth herein in their entirety.

42.     Plaintiff suffered from several health conditions that were "disabilities" as defined by and within the meaning of the ADA.

43.     Plaintiff also had a record of and/or was perceived as having a physical impairment that substantially limited certain major life activities.

44.     At all times material hereto, Plaintiff was able to perform his job duties with or without a reasonable accommodation.

45.     Plaintiff requested reasonable accommodations for his disabilities, including, but not limited to, periodic breaks for his diabetes and medical leaves of absence and light-duty for his carpal tunnel syndrome and tendinitis.

46.     Defendant failed to provide Plaintiff with reasonable accommodations for his disabilities, even though Plaintiff requested the same.

47.     While Defendant eventually granted Plaintiff's request for light-duty, Defendant suspended Plaintiff without pay just days after his light-duty began and terminated his employment shortly thereafter (while he was still suspended) for blatantly pretextual stated reasons.

48.     Defendant suspended Plaintiff without pay and terminated Plaintiff's employment because of his actual/record of/perceived disabilities and/or his requests for reasonable accommodations.

49.     Plaintiff was also subjected to a hostile work environment during his employment with Defendant by, among other things, subjecting him to over-all discriminatory and demeaning

8

treatment, refusing to accommodate Plaintiff and therefore exacerbating his health conditions and forcing him to miss time from work, attempting to interfere with Plaintiff's rights under the ADA and workers' compensation law, and refusing to provide Plaintiff with a schedule when he ultimately was permitted to return to work on light duty.[2]

50.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant violated the ADA.

51.    As a direct and proximate result of Defendant's violations of the ADA, Plaintiff has suffered the injuries, damages and losses set forth herein.

52.    In committing the aforesaid violations of the ADA, Defendant acted with malice and/or showed willful and/or reckless indifference to the discriminatory and retaliatory practices complained of herein, warranting the imposition of punitive damages.

53.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's unlawful acts unless and until this Court grants the relief requested herein.

54.    As a direct and proximate result of Defendant's violations of the ADA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

55.    No previous application has been made for the relief requested herein.

## COUNT II
## Common Law Wrongful Discharge
### (Public Policy Violation)

56.    Plaintiff incorporates the paragraphs above as if set forth herein in their entirety.

---

[2] This is not an exhaustive list of the ways Plaintiff was subjected to a hostile work environment by Defendant but merely examples of such discriminatory treatment.

57.     In close temporal proximity to Plaintiff's termination, Plaintiff visited Defendant's workers' compensation physician, sought workers' compensation benefits, and requested light-duty in connection with work injuries.

58.     Defendant denied Plaintiff's requests for light-duty and improperly interfered with Plaintiff's efforts to exercise his workers' compensation rights.

59.     On or about July 7, 2016, after Plaintiff missed weeks of work due to Defendant's denial of his requests for light-duty, Defendant permitted Plaintiff to return to work on light-duty and told him that he was only being provided with light-duty because it was based on a workers' compensation claim.

60.     After Plaintiff returned to work on light duty on or about July 7, 2016, he was subjected to extreme hostility by Defendant's management.

61.     Defendant suspended Plaintiff's without pay just days after he exercised his workers' compensation rights and terminated his employment shortly thereafter (while he was still suspended).

62.     Defendant terminated Plaintiff's employment because he claimed/sought workers' compensation benefits.

63.     It is against the public policy of the Commonwealth of Pennsylvania for an employer to terminate an employee for seeking to exercise rights protected under the Workers' Compensation Act. *See, e.g., Shick v. Shirey*, 552 Pa. 590 (1997); *Rothrock v. Rothrock Motor Sales, Inc.*, 584 Pa. 297 (2005).

64.     Defendant wrongfully discharged Plaintiff in violation of the public policy of the Commonwealth of Pennsylvania.

## RELIEF

WHEREFORE, Plaintiff, Antony Kelley, seeks damages and legal and equitable relief in connection with Defendant's unlawful conduct, and specifically prays that the Court grant the following relief:

(a)     Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

(b)     Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

(c)     Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

(d)     Plaintiff is to be awarded the costs and expenses of this action and reasonable attorneys' fees as provided by applicable federal and state law;

(e)     Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

(f)     Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.  Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

11

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:

Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square
Suite 128
Bensalem, PA 19020
(215) 639-0801
*Attorney for Plaintiff*

Dated: July 14, 2017

12